# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHARON DENISE VARNADO** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-2199-SSV-SS** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Sharon Denise Varnado ("Varnado"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, as well as her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On May 12, 2010, Varnado submitted applications for benefits. R. 89-91. She reported that she became unable to work on January 1, 2008. R. 89. She related issues with 5 bulging discs in her neck, poor circulation, severe pain in her arm and legs, severe headaches due to the bulging discs, rheumatoid arthritis, and pressure on her eyeballs. R. 99. On November 11, 2010, her claim for benefits was denied. R. 64-67 and 495-498. On July 26, 2011, there was a hearing before an Administrative Law Judge ("ALJ"). R. 500-520. On September 28, 2011, the ALJ issued an unfavorable decision. R. 11-21. On July 3, 2012, the Appeals Council denied her request for

review.  R. 5-8.  On September 4, 2012, she filed a complaint in federal court.  Rec. doc. 1.  The

matter was submitted on cross-motions for summary judgment.  Rec. docs. 23 and 24.

## STATEMENT OF ISSUES ON APPEAL

1.      Did the ALJ err in rejecting the opinions of Varnado's treating physicians?

2.      Did the Appeals Council err in rejecting the opinion of Varnado's treating physician?

3.      Did the ALJ err in determining the residual functional capacity?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.      Varnado met the insured status requirements of the Act through September 30, 2013.

2.      Varnado had not engaged in substantial gainful activity since November 30, 2010, the
        amended alleged onset date (20 C.F.R. §§404.1571 *et seq*., and 416.971 *et seq*.).

3.      Varnado had the following severe impairment:  gastritis (20 C.F.R. §§404.1520(c) and
        416.920(c)).

4.      Varnado did not have an impairment or combination of impairments that met or medically
        equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1(20
        C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      Varnado had the residual functional capacity to perform light work as defined in 20 C.F.R.
        §§404.1567(b) and 416.967(b), except she could occasionally perform overhead work
        activity.

6.      Varnado was capable of performing past relevant work as a hotel housekeeper and salad
        counter attendant.  This work did not require the performance of work-related activities
        precluded by Varnado's residual functional capacity (20 C.F.R. §§404.1565 and 416.965).

7.      Varnado was not under a disability, as defined in the Act, from November 30, 2010, through
        the date of the decision (20 C.F.R. §§404.1520(f) and 416.920(f)).

R. 16-20.

## ANALYSIS

a.      **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's.  Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

---

[1]  The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry.  Id.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing.  Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462.  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.    **Testimony at the Hearing.**

The request by Varnado's lawyer that the onset date be changed to November 30, 2010 was accepted.  It was sought because that was when the gastritis became quite symptomatic.  R. 504.

Varnado was born in 1966.  R. 505.  She lived in Hammond.  R. 505.  She had a high school diploma.  R. 507.  She was married.  R. 506.  Her children were over 20 and lived on their own.  R. 506.  She never had a driver's license.  R. 508.  Although her husband was disabled with a blood disorder, he drove her to the doctor.  R. 507.

Varnado's last employment was in 2008 at Wendy's as a sandwich maker.  R. 506.  She tried to return to work at Wendy's in 2009.  She stopped because of headaches and pain in her arm and legs.  She has not worked since then.  R. 511.

Varnado was injured in a car accident about five years before the hearing.  R. 509.  Her

husband rear-ended someone.  R. 509.  Pallets in his truck slid forward and hit her in the back of the head.  R. 511-12.  She has had severe headaches since then.  She was told that bulging discs were responsible for the headaches.  R. 512.  She has the headaches about three to four days a week.  R. 512.  When she has a headache, she takes medication and tries to lie down until it starts to ease up.  R. 513.  She takes Lortab 10, two pills at a time four times a day for her headache pain.  R. 512.  She could not work at a desk and answer a phone for 40 hours a week because of her headaches.  R. 513. Her headaches and stomach pain prevent her from working.  R. 508.

When Varnado wakes up, she takes pain medicine.  She tries to clean the kitchen, cook and make her bed.  R. 509.  She likes to cook red beans and rice, gravy and rice, and fried chicken.  She does not eat fried food, but her family likes it.  R. 509.  If she does not cook, her husband will cook.  R. 510.  She hardly eats anything.  She is afraid to eat, because of the problems with her stomach.  R. 510.  Every time she eats something, her stomach hurts.  R. 513.  She becomes nauseated for about 20 minutes.  R. 513.  She described that if she eats, it goes straight through her.  R. 511.  The abdominal pain from the gastritis is "bad."  R. 512.  She is 5'11" and weighs about 210 pounds.  Her weight has been stable for the preceding year.   R. 510.

The last time Varnado saw Dr. Barrow was in September 2010.  R. 515.  She does not see Dr. Barrow any longer.  She sees Dr. Charles Tessier in Baton Rouge once a month for pain management.  R. 507-08 and 515.  Dr. Tessier gave her a urine drug screen.  R. 517.  Dr. Naseri was the doctor for her stomach.  R. 508.  Dr. Naseri said she had bacteria on her colon.  The medicine did not work.  He referred her to Bogalusa for an upper GI.  R. 508-09.

Based on the ALJ's hypothetical question, the vocational expert testified that Varnado could do the full range of light duty work with occasional overhead.  Her prior work as a hotel housekeeper and as salad bar attendant could be performed.  R. 518.

c.    **Medical Evidence**.

<u>2007</u>

On January 11, 2007, Varnado was seen at the Lallie Kemp Medical Center ("Lallie Kemp") in Independence, Louisiana, for gallstones.  She reported that:  (1) her first episode of gallstones was on December 6, when she went to an emergency room; and (2) she had been told that she had an ovarian cyst that needed to be removed.  R. 276-77.  On January 27, she was seen at the Lallie Kemp emergency room for abdominal pain.  R. 271-75.

On February 1, Varnado was seen at the North Oaks Health System ("North Oaks") emergency room in Hammond.  She reported gallstones and abdominal pain with nausea and vomiting.  Medication was prescribed.  R. 319-24.  She did not report any pain in her back, neck, arms or legs.  R. 325.  She was scheduled for the removal of her gallbladder.  R. 326-29.

On March 8, she returned to Lallie Kemp and reported weight loss and abdominal pain.  R. 265-66.  On April 24, she returned to North Oaks.  She had experienced upper abdominal pain for three months.  R. 311-17.  On May 3, she returned to Lallie Kemp with complaints of abdominal pain.  R. 260-61.  On May 20, she returned to North Oaks emergency room and reported chest pains.  R. 302-05.  She reported a three day history of constant chest pain.  R. 306.  Medication was prescribed.  R. 308.  An ECG was normal.  R. 309.

On May 24, Varnado's gallbladder with stones was removed.  R. 253-55 and 258-59.  On May 31, she returned to Lallie Kemp for a post-op visit.  She had no complaints.  R. 249.  She was

to return as needed.  R. 250.

On July 25, she was seen at North Oaks emergency room with a complaint of a spider bite. R. 294-96.  The diagnosis was a flank abscess.  R. 298-300.

On September 24, she returned to Lallie Kemp for a pre-op visit for a laparatomy.  R. 246-47.  On October 2, she was admitted for chronic pelvic pain.  There was a left ovarian cyst with adhesions.  A cholecystectomy was performed.  She was discharged on October 4, 2007.  R. 238-43. The specimens were benign.  R. 244-45.  On November 12, she returned to Lallie Kemp for a post-op visit.

<u>2008</u>

On January 8, Varnado was seen at Lallie Kemp's emergency room with complaints of abdominal and pelvic pain for three weeks.  R. 230-32.[2]

On April 11, she was seen by Charles Tessier, M.D., a specialist in industrial and family medicine, with complaints of pain in her back and neck.  It was hard for her to sleep.  R. 356.  On May 12, she returned to Dr. Tessier with complaints of neck and back pain.  R. 355.

On May 29, Gary W. Barrow, M.D., a specialist in physical medicine and rehabilitation, saw Varnado for an initial outpatient visit.  She reported an accident in which her husband's truck rear-ended a vehicle.  Wooden pallets came through the window and hit her.  She complained of neck and head pain.  The examination of the neck demonstrated a full range of motion of the cervical spine.  The diagnosis was cervical pain and headaches as a result of cervical whiplash as well as C5-

---

[2]  In her application for benefits, Varnado reported that she became unable to work on January 1, 2008.  R. 89.

6 and C6-7 disc protrusions.  She signed a pain agreement.  Lortab, Soma and Xanax were prescribed.  She was to return in one month.  R. 166-67.

On July 9, she returned to Dr. Barrow with complaints of pain in her head and neck.  She was to return in three months.  R. 164.

On November 6, she returned to Lallie Kemp and reported pain and arthritis in her arms, legs and neck.  R. 437.

<u>2009</u>

On January 6, Varnado was seen by Dr. Barrow for neck pain and headaches.  R. 163.  On March 5, there was a radiology report on the cervical spine.  No acute abnormality was observed.  R. 465.  On April 2, she was seen by Dr. Barrow for neck pain and headaches.  Medication was prescribed.  She was to return in three months.  R. 161.  On April 7, she was seen at North Oaks emergency center for a cold and body aches.  She was given an injection.  Medication was prescribed.  R. 287-90.

On June 17, she went to Lallie Kemp with complaints of pain in her legs and arms.  R. 210.[3] She reported depression.  R. 211.  On July 2, she was seen by Dr. Barrow for a cough.  She reported she was working full time at Wendy's.  R. 159.

On October 2, she was seen by Dr. Barrow for reports of neck pain.  She was to return in three months.  R. 157.  On October 28, she returned to Lallie Kemp with complaints of headaches and neck pain.  R. 207.  Her medication was changed.  She was to return in three to four months.  R. 208.

---

[3]  In her counsel's letter of September 9, 2010, the onset date was described as June 2009.  R. 60-61.

On December 31, she was seen by Dr. Barrow.  She reported pain in her neck and upper extremities.  R. 156.

2010

On January 4, Varnado returned to Lallie Kemp with complaints of abdominal pain for the previous six weeks.  R. 205-06.  On January 21, she was seen at Lallie Kemp emergency room for almost daily headaches for the previous three weeks.  R. 196-200.  On January 29, she was seen at Lallie Kemp for complaints of abdominal pain.  R. 194.  Tests were ordered.  R. 195.

The impression from a February 17 cervical spine MRI without contrast was multilevel cervical spondylosis with disc bulges at various disc levels leading to varying degrees of thecal sac encroachments without any evidence of cervical disc herniations or spinal cord compressions.  R. 469.  On February 24, 2010, an upper GI series was performed following a report of abdominal pain. R. 463.

On March 28, she reported bad headaches and neck pain.  R. 282-85 and 185-87.  There was a CT scan of the head.  No abnormalities were identified.  R. 462.  On March 31, she was seen by Dr. Barrow with complaints of headaches.  Lortab, Soma, Xanax and Ultram were prescribed.  R. 159.  On April 14, she was seen at Lallie Kemp for complaints of headaches and neck and abdominal pain.  R. 179-80.  On June 30, she was seen by Dr. Barrow for  neck pain.  R. 367-68

On July 28, 2010, there was an examination by Christino Dijamco, M.D., for the state disability office.  The physical examination was unremarkable with no clinical findings that could correlate with the allegations of severe headaches.  There were no clinical findings that could correlate with the allegations of poor circulations and severe pain in her arms and legs. R. 333-36.

On July 30, 2010, Dr. Barrow completed a medical narrative where he reported that he considered Varnado completely disabled from any type of full time employment.  R. 338.

On August 4, she was seen at Lallie Kemp for headaches and neck pain.  R. 404.  She was to return in five months.  R. 405.

On September 10, she was seen by Walter Ellis, M.D., a specialist in physical medicine and rehabilitation, in practice with Dr. Barrow.  Dr. Ellis diagnosed cervical spondylosis with shin splints.  She was continued on Lortab for pain and Flexeril as a muscle relaxer.  She declined vocational rehabilitation.  Exercises for range of motion and stretching were provided.  She was to return in two months for a reassessment of her pain.  R. 362.

On September 19, she was seen at the Lallie Kemp emergency room and reported pain in her legs, arm and abdomen.  R. 399-403.

On November 2, Sandra B. Durdin, Ph.D., a clinical psychologist, completed a psychological evaluation.  The diagnosis was adjustment reaction with depressed mood - pain disorder.  Adequate pain control was necessary.  Varnado's ability to tolerate the stress and pressure associated with day-to-day work activity demands was mild to moderately impaired due to alleged pain.  R. 341-43.

On November 30, she was seen at the Lallie Kemp emergency room with a stomach ache.  R. 394.  The diagnosis was gastritis.  R. 397.  On December 3, she was seen by Dr. Tessier.  She reported headaches and abdominal pain. R.  354.

<u>2011</u>

On January 4, she returned to Dr. Tessier and reported headaches and abdominal pain.  R. 354. On January 10, she was seen at Lallie Kemp for pain in the abdomen, arms and legs.  Medication was prescribed.  She was to return in four months.  R. 392-93.  On January 24, she was

11

seen by Dr. Tessier.   R. 353.   On February 15, she returned to Dr. Tessier.   Medication was prescribed.  R. 353.  On March 15, she returned to Dr. Tessier.  Medication was prescribed. R. 352.

On April 29, she was seen at Lallie Kemp for abdominal pain.  R. 387.  On May 6, she was seen by Dr. Tessier.  R. 351 and 359.  On May 17, a diagnostic procedure was performed.  There was a normal esophagus and duodenum.  Gastritis was found in the stomach.  R. 460.  The diagnosis was severe chronic active gastritis.  R. 449. On May 25, she was seen at Lallie Kemp for pain in her abdomen.  R. 384.

On June 3, July 1 and July 29, Varnado was seen by Dr. Tessier.  R. 359 and 473.[4]  The notes for June 3 include "totally disabled."  R. 359.

2012

On April 30, Dr. Tessier reported that Varnado had been totally disabled since August 2008. R. 472.[5]

d.      **Plaintiff's Appeal.**

Issue No. 1.     Did the ALJ err in rejecting the opinions of Varnado's treating physicians?

On July 30, 2010, Dr. Barrow completed a "to whom it may concern" medical narrative in which he reported on Varnado's condition.  He stated that he considered her "to be completely disabled from any type of full time employment."  R. 338.  On June 3, 2011, Dr. Tessier's handwritten medical note says near the bottom "totally disabled."  Most of the remainder of the note is illegible.  R. 359.

---

[4]  The hearing before the ALJ was on July 26, 2011.  R. 500.  The ALJ's decision is dated September 28, 2011.  R. 11.

[5]  The Appeals Council noted that it received the April 30, 2012 letter from Dr. Tessier.  R. 8.

Varnado concedes that opinions on the ultimate issue of disability are not afforded special significance.  She contends, however, that the ALJ was required to explain his rejection of the treating opinions.  She argues that, pursuant to 20 C.F.R. § 404.1527(c)(2), the ALJ was required to give good reasons for rejecting the opinions and did not do so.  She urges that, pursuant to Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000), the ALJ was required to consider each of the Section 404.1527 factors before declining to give any weight to the opinions by Drs. Barrow and Tessier.

The Commissioner responds that: (1) the ALJ properly weighed the opinions; (2) substantial evidence supports the weight given to the opinions by the ALJ; (3) the ALJ's decision was consistent with Newton; and (4) the ALJ considered the Section 404.1527(c) factors.

The ALJ has the sole responsibility for determining a claimant's disability status.  Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).  The ALJ is free to reject any physician's opinion when the evidence supports a contrary conclusion.  Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995).  Statements on the ultimate issue of disability are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e).  Varnado concedes that the statements in Dr. Barrow's medical narrative of July 30, 2010 that she is completely disabled from any type of full time employment (R. 338) and Dr. Tessier's handwritten note of June 3, 2011 "totally disabled" (R. 359) are statements on the ultimate issue of disability.

Pursuant to Section 404.1527(b), the Commissioner is required to consider the medical opinions in a claimant's case record.  The first issue is whether a medical opinion is given controlling weight.  Such opinions must be from a treating physician.  Section 404.1527(c)(2).  Drs. Barrow and Tessier are treating physicians.

13

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

Id.

Varnado contends that the ALJ did not explain his refusal to give the opinions of Drs. Barrow and Tessier controlling weight.  The ALJ states, however, that he considered Dr. Barrow's opinion and "gives it little weight because Dr. Barrow failed to support his characterization of the MRI and his opinion on work ability with positive examination findings."  R. 17.  The ALJ reported that he gave little weight to Dr. Tessier's opinion "because the only cervical MRI in the record shows no evidence of cord compression, which fails to support the alleged lower extremity findings."  R. 17-18.

The ALJ concluded that the two opinions were not supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record, in particular the February 17, 2010 cervical MRI.  R. 17-18.  Dr. Barrow stated that Varnado had "MRI evidence of cervical spondylosis with a broad disc bulge at C5-6 with thecal sac encroachment."  R. 338.  The impression from the February 17, 2010 cervical MRI was:

> Multilevel cervical spondylosis with disc bulges at various disc levels . . . leading to varying degrees of thecal encroachment without any evidence for cervical disc herniations nor spinal cord compressions.

R. 469 (emphasis added).  The ALJ recorded that the MRI showed no evidence of cord compression which failed to support Dr. Tessier's positive straight leg raise test.  R. 17 and 352.  The MRI is inconsistent with the opinions by Drs. Barrow and Tessier. There is substantial evidence to support the ALJ's decision to decline to give their opinions  controlling weight.

The regulation provides that when the Commissioner does not give the treating source's opinion controlling weight, the following factors are applied:  (1) examining relationship; (2) treatment relationship, including:  (a) the length of the treatment relationship and the frequency of examination; and (b) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization.  Section 404.1527(c).

The ALJ gave little weight to the opinions of Drs. Barrow and Tessier.  He found that there were no credible functional limitations articulated by any medical source related to the allegation of neck pain.  He found that Varnado's condition concerning the neck pain was non-severe considering Varnado's treatment by Dr. Ellis.  R. 18.

The first factor is the examining relationship.  More weight is given to a physician who has examined a claimant than a non-examining physician.  Section 404.1527(c)(1).  Because Drs. Barrow, Tessier and Ellis were examining physicians, this is not an issue.

The second factor is the treatment relationship.  It includes the length of the relationship and frequency of examination.  More weight is given to a treating source because of the ability to provide a longitudinal picture that cannot be provided by individual examinations.  The second factor also includes the nature and extent of the treatment.  The more knowledge that a treating source has about a claimant's impairments the more weight will be given to the source's medical opinion. Section 404.1527(c)(2).  The Commissioner does not contest that Drs. Barrow and Tessier had ongoing treating relationships with Varnado.

The ALJ's decision demonstrates that the ongoing treatment relationship was considered for each of the doctors.  For Dr. Barrow the ALJ noted that: (1) prior to the November 30, 2010 onset date, Varnado was seen by Dr. Barrow in May 2008 for neck pain; and (2) on July 30, 2010, Dr.

Barrow released the letter in which he stated that Varnado was completely disabled.  The ALJ recorded that Varnado was seen by Dr. Ellis on only one occasion, September 29, 2010.  The ALJ reported that after the visit to Dr. Ellis, Varnado returned to Dr. Tessier on November 3, 2010. On March 15, 2011, Dr. Tessier reported the result of the straight leg raising test.  The note for June 3, 2011, contains the statement "totally disabled."

The medical records indicate that Varnado's initial visit to Dr. Tessier was on April 11, 2008.  She reported pain in her back and neck.  R. 356.  She returned on May 12, 2008, but did not see Dr. Tessier again until November 3, 2010.  R. 355.  After she stopped seeing Dr. Tessier in 2008, she went to Dr. Barrow for an initial visit on May 29, 2008.  R. 166-67.  She continued seeing Dr. Barrow until September 10, 2010, when she was seen by Dr. Ellis in Dr. Barrow's office.  R. 362. Dr. Ellis prescribed rehabilitation which Varnado declined.  She was to return to Dr. Ellis in two months for a reassessment of her pain, but she did not.  Instead, she returned to Dr. Tessier for treatment.  R. 354.

The third factor is supportability.  When the medical source presents medical signs and laboratory opinions, more weight will be given to the opinion.  Section 404.1527(c)(3).  The ALJ noted that the only cervical MRI did not support the opinions of Drs. Barrow and Tessier.  The absence of any evidence in the MRI for cervical disc herniations or spinal cord compressions was discussed above.  Supportability was considered by the ALJ.

The fourth factor is consistency.  Where an opinion is more consistent with the record as a whole, more weight will be given to it.  Section 404.1527(c)(4).  The opinions of Drs. Barrow and Tessier are not consistent with Dr. Ellis' treatment.  Dr. Ellis found a full range of motion for her neck and full upper and lower extremity reflexes.  Dr. Ellis observed that the February 17, 2010 MRI

did not show any spinal cord compression.  Dr. Ellis' assessment was cervical spondylosis with shin splints.  She was given exercises.  Unlike Drs. Barrow and Tessier, who opined that she was totally disabled, Dr. Ellis offered her vocational rehabilitation.  R. 362.  Not only was the result of Dr. Ellis' examination inconsistent with the opinions of the other two physicians, but the ALJ found that Varnado's refusal of vocational rehabilitation significantly reduced her credibility.  R. 17.

The final factor is specialization.  The Commissioner will give more weight to the opinions of a specialist where the medical issues relate to the speciality than to the opinion of a source who is not a specialist.  Section 404.1527(c)(5).  Drs. Ellis and Barrow were both board certified in physical medicine and rehabilitation.  R. 362.  Dr. Tessier was a family practice specialist.  R. 472. There is no basis for granting the opinions of Drs. Barrow and Tessier more weight than that of Dr. Ellis based on their respective specialities.

Varnado urges that the ALJ failed to comply with Newton.  In Newton, the ALJ rejected the opinion of the claimant's treating specialist that the claimant could not perform any sedentary work. The Fifth Circuit reversed and remanded for the purpose of requiring the ALJ to perform the analysis required by the SSR 96-2p before rejecting the treating specialist's opinion.  It stated that "(t)his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."  Id. at 458.  Newton is inapplicable.  Varnado presents medical evidence from three treating physicians.  The ALJ relied on the examination by Dr. Ellis, a treating physician, because of its consistency with the cervical MRI.

The ALJ did not err in rejecting the opinions of Varnado's treating physicians.

Issue no. 2.      Did the Appeals Council err in rejecting the opinion of Varnado's treating physician?

17

On September 28, 2011, the ALJ issued an unfavorable decision.  R. 11-21.  On April 30, 2012, Dr. Tessier completed a handwritten letter addressed to counsel for Varnado.  Dr. Tessier reported that:  (1) Varnado had been totally disabled since August 2008; (2) she suffered from severe pain caused by cervical protrusions; (3) the pain required medication, including antidepressants for depression; (4) she suffered from headaches, generalized anxiety, pain in her back, restless leg syndrome, joint pain, rheumatoid arthritis, and radicular pain down her arms and legs; (5) she was incapable of meeting the demands of a 40 hour work week.  R. 472.

The Appeals Council reported that it received additional evidence, including Dr. Tessier's April 30, 2012 letter, and considered it.  R. 5-8.  Varnado contends that the Appeals Council did not offer any reason to reject the opinion.  The requirement of a detailed discussion of additional evidence was suspended by a memorandum from the Executive Director of Appellate Operations dated July 20, 1995.  Higginbotham v. Barnhart, 405 F.3d 332, 335 n. 1 (5th Cir. 2005).

Varnado contends that the Appeals Council was required to give controlling weight to Dr. Tessier's April 30, 2012 letter and in particular the statement in the April 30, 2012 letter that she is incapable of meeting the demands of a 40 hour workweek at any level of sedentary or manual labor. This argument fails for three reasons.  First, the statement that she is totally disabled since August 2008 is a statement on the ultimate issue of disability which is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).  Second, the opinions expressed in the letter rest on the protrusions at C5-6 and C6-7 described in the February 17, 2010 cervical MRI which revealed no evidence of cervical disc herniations or spinal cord compression.  R. 469.  The complaints of pain radiating down her arms and legs are not well-supported by the MRI.  Third, the statement that she

cannot meet the demands of a 40 workweek is not consistent with Dr. Ellis' treatment and offer of vocational rehabilitation.

The Appeals Council did not err in rejecting the opinion of Varnado's treating physician.

<u>Issue no. 3</u>.      Did the ALJ err in determining the residual functional capacity?

The ALJ determined that Varnado could perform light work.  R. 18.  She was capable of performing her past relevant work as a hotel housekeeper and counter attendant.  R. 20.

Varnado contends that (1) the ALJ relied on his own medical opinion to determine the RFC; (2) he rejected the opinions of the treating physicians and Dr. Maria Pons, the agency physician, who completed a RFC on August 18, 2010 in connection with the determination that she was not disabled (R. 22-30A); and (3) there was no medical evidence supporting the ALJ's RFC.

> Residual functional capacity, as it is used in the Regulations, is a term of art which designates the ability to work despite physical or mental impairments.  A person's residual functional capacity is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work.

<u>Hollis v. Bowen</u>, 837 F.2d 1378, 1386 -1387 (5th Cir. 1988) (citations and quotation marks omitted). The ALJ is responsible for assessing the RFC at the administrative law judge hearing level.  Section 404.1546(c).  The Commissioner argues that the ALJ discharged his responsibility by carefully considering the medical evidence and other evidence of record.

On November 11, 2010, the Social Security Administration notified Varnado that her claim for benefits was denied because she was not disabled.  R. 64.  The determination was made by a physician, Dr. Joseph Tramontana, with a disability determination explanation.  R. 22-30A.  Dr. Maria Ponds completed an RFC on August 18, 2010 and November 10, 2010.  R. 27-30.  Dr. Pons determined that Varnado did not have the RFC to perform her past relevant work as housekeeper

and food preparation as actually performed or as generally performed in the national economy.  R. 29.  She did find that she could perform the jobs of school bus monitor, barker and hostess.  R. 30. Although Dr. Ponds determined that Varnado could perform these jobs, Dr. Ponds' determination of Varnado's RFC was more restrictive than the ALJ's determination.  Unlike Dr. Ponds, the ALJ found that Varnado could return to her past relevant work.  R. 20.

Varnado argues that <u>Williams v. Astrue</u>, 355 Fed.Appx. 828, 2009 WL 4716027 (5th Cir. 2009), requires that her claim be remanded.  The Fifth Circuit determined that there was no evidence supporting the ALJ's determination that the claimant could stand or walk for six hours in an eight-hour day.  The ALJ did not accept the opinions of the claimant's three treating physicians that claimant was unable to perform anything but sedentary work.  <u>Id</u>. at 831.  Because the evidence cited by the ALJ did not support the finding that claimant could stand or walk for six hours in an eight hour day, "the ALJ impermissibly relied on his own medical opinions as to the limitations presented. . . ."  <u>Id</u>. at 832.

At the hearing, Varnado's counsel requested that the alleged onset date be changed to November 30, 2010 because at that time her gastritis became quite symptomatic.  R. 504.  On November 30, 2010, Varnado was seen at the Lallie Kemp emergency room.  R. 394.  The ALJ discussed the Lallie Kemp records from November 30, 2010 through May 25, 2011.  R. 19.

Varnado testified that: (1) she could not work because of bad headaches and stomach problems (R. 508 and 511); (2) she did nothing all day, except get up, make her bed and cook (R. 509); and (3) when she ate, the food went straight through her (R. 511).  The ALJ determined that Varnado's statements of her limitations were not credible.  R. 19.  He noted that at Lallie Kemp she reported constipation on January 10, 2011 (R. 392) and April 29, 2011 (R. 387).  From November

30, 2010 through May 25, 2011, there was little change in her weight:  November 30, 2010 - 216

pounds (R. 394); January 10, 2011 - 219 pounds (R. 392); April 29, 2011 - 219 pounds (R. 387); and

May 25, 2011 - 215 pounds (R. 384).  The ALJ noted that the reports of constipation and the absence

of any loss of weight were inconsistent with her testimony that food went straight through her.  This

reduced her credibility.  The ALJ noted that the clinician at Lallie Kemp did not assign any

functional limitations and only recommended prescription medication.  R. 19.

Dr. Ellis' offer of vocational rehabilitation supports the ALJ's determination of the RFC.  On

July 24, 2010, a consultative examination was performed by Christino Dijamco, M.D.  R. 333-36.

He found that there were no clinical findings that correlated with Varnado's allegations of poor

circulation and severe pain in her arms and legs.  R. 335.  Dr. Dijamco's report supports the ALJ's

finding on Varnado's credibility and the RFC.

Varnado's lack of credibility, the reports by Drs. Ellis and Dijamco and the Lallie Kemp

record of the treatment for gastritis from November 30, 2010 through May 25, 2011 are substantial

evidence for the ALJ's decision to give little weight to Dr. Ponds' more restrictive RFC.

The ALJ did not err in determining the residual functional capacity.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment

(Rec. doc. 24) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 23) be

DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and

recommendations in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 4th day of September, 2013.

**SALLY SHUSHAN**
**United States Magistrate Judge**